## UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

## LAFAYETTE-OPELOUSAS DIVISION

| | |
|---|---|
| **CHRISTY PIZZOLATTO** | **CIVIL ACTION NO. 08-CV-0453** |
| **VS.** | **JUDGE MELANÇON** |
| **MICHAEL J. ASTRUE**<br>    **Commissioner, Social Security Admin.** | **MAGISTRATE JUDGE METHVIN** |

### *REPORT AND RECOMMENDATION*

Before the court is an appeal of the Commissioner's finding of non-disability.

Considering the administrative record, the briefs of the parties, and the applicable law, it is

recommended that the Commissioner's decision be **REVERSED AND REMANDED.**

### *Background*

Christy Pizzolatto is 45 years old. She has a fifth grade education and no relevant work

history. Pizzolatto filed this action seeking judicial review of the Commissioner's administrative

decision denying her application for supplemental security income (SSI). (Tr. 52-55). Pizzolatto

complains of disabling pain from back and ankle injuries. After the Agency initially denied her

application, an administrative law judge (ALJ) conducted a hearing on October 10, 2007. (Tr.

177-203). On November 19, 2007, the ALJ issued a decision finding that Pizzolatto was not

disabled. (Tr. 8-17). On February 12, 2008, the Appeals Council denied Pizzolatto's request for

review, making the ALJ's decision the Commissioner's final decision. (Tr. 3-5).

### *Issue Presented*

The sole issue presented is whether the Commissioner's decision is supported by

substantial evidence in the record.

### *Standard of Review*

The court's review is restricted under 42 U.S.C. §405(g) to two inquiries: (1) whether the

Commissioner's decision is supported by substantial evidence in the record; and (2) whether the

decision comports with relevant legal standards.  Carey v. Apfel, 230 F.3d 131, 136 (5th Cir.

2000); Anthony v. Sullivan, 954 F.2d 289, 292 (5th Cir.1992); Greenspan v. Shalala, 38 F.3d 232,

236 (5th Cir. 1994).  Substantial evidence is such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion.  Carey, 230 F.3d at 136; Anthony, 954 F.2d at 292;

Carrier v. Sullivan, 944 F.2d 243, 245 (5th Cir. 1991).  The court may not re-weigh the evidence

in the record, nor substitute its judgment for that of the Commissioner, even if the preponderance

of the evidence does not support the Commissioner's conclusion.  Carey, 230 F.3d at 136;

Johnson v. Bowen , 864 F.2d 340, 343 (5th Cir.1988).  A finding of no substantial evidence is

appropriate only if no credible evidentiary choices or medical findings exist to support the

decision.  Johnson, 864 F.2d at 343.[1]

---

[1] In determining whether a claimant is capable of performing substantial gainful activity, the Secretary uses a five-step sequential procedure set forth in 20 C.F.R. §404.1520(b)-(f) (1992):

  1.    If a person is engaged in substantial gainful activity, he will not be found
        disabled regardless of the medical findings.

  2.    A person who does not have a "severe impairment" will not be found to be
        disabled.

  3.    A person who meets the criteria in the list of impairments in Appendix 1 of the
        regulations will be considered disabled without consideration of vocational
        factors.

  4.    If a person can still perform his past work, he is not disabled.

  5.    If a person's impairment prevents him from performing his past work, other
        factors including age, education, past work experience, and residual functional
        capacity must be considered to determine if other work can be performed.

In the instant case, the ALJ determined that Pizzolatto's history of a fracture of the right ankle and degenerative disc disease are severe impairments. At Step 5, the ALJ found that Pizzolatto has the residual functional capacity to perform the full range of light work Using the Medical Vocational Guidelines as a framework for decision making, the ALJ found that there are jobs which exist in significant numbers which Pizzolatto can perform, and therefore she is not disabled.

### *Administrative Record*

Pizzolatto was in a car accident on January 31, 2005, and was treated at the East Houston Medical Center for contusions, back pain, neck injuries and a scalp laceration.[2]

An MRI dated July 14, 2005 showed disc herniations at L3-4 and L4-5, a posterior disc bulge in the midline at L5-S1, and bony lipping or disc herniation posterior and bilaterally at C5-6 and to the right at C6-7.[3]

On March 8, 2006, Pizzolatto broke her ankle in two places in a fall at her home. She was given pain medication at the American Legion Hospital Emergency Room and referred to University Medical Center (UMC) in Lafayette, Louisiana for surgery.[4]

The Radiology Report completed by UMC on March 13, 2006 showed medial and lateral malleolar fractures; a mild medial subluxation of the talus with respect to the tibial plafond and mild widening of the tibio-talar joint with no definite additional fractures noted.[5]

---

[2] Tr. 170.

[3] Tr. 165.

[4] Tr. 89-97, 105-112.

[5] Tr. 125.

An X-Ray of Pizzolatto's cervical spine taken the same day showed approximately 5-10% body height loss anteriorly at C5 with no associated soft tissue swelling; no evidence of retropulsion of posterior aspect of the vertebral body; and no alteration in alignment with flexion and extension maneuvers.[6]

On March 21, 2006, Dr. Matthew Williams, M.D., a UMC orthopaedic surgeon, performed an "open reduction and internal fixation of right lateral malleolus and open biopsy of right medial malleolus."[7]

On April 25, 2006, Dr. Williams performed an "open reduction and internal fixation of right medial malleolus fracture with Gerdy's tubercle bone grafting and allograft bone grafting."[8] Dr. Williams ordered that Pizzolatto should not bear weight on the ankle for at least 10-12 weeks and explained the effect of smoking on bone-healing to Pizzolatto.

Pizzolatto was seen at UMC's Orthopedic Clinic on June 20, 2006.[9] She had not been bearing weight and her pain level was 9 out of 10.

Pizzolatto was seen again at the Orthopedic Clinic on July 20, 2006.[10] She had a pain level of 10/10 and was using crutches and was unable to bear weight. It was noted that the right foot/ankle incision was healed and that she had no edema. Pizzolatto advised that she had been

---

[6] Tr. 124.

[7] Tr. 137.

[8] Tr. 129-131.

[9] Tr. 158.

[10] Tr. 156.

taking Percocet for 6 months. She was prescribed 30 Lortab #7.5 mg. pills and told to return to the Clinic in 30 days.

The impression from a September 29, 2006 X-Ray showed "healing bimalleolar fractures with internal fixation."[11]

Orthopedic Clinic progress notes dated December 4, 2006 showed that Pizzolatto complained of a pain level of 8/10; she was sometimes unable to walk; her incision was well healed.[12] She was prescribed 20 Lortab 7.5 and told to return to the clinic in three months for follow-up.

A residual functional capacity assessment completed by a DDS medical consultant concluded that Pizzolatto could occasionally lift 20 pounds and frequently lift 10 pounds; sit and stand 6 hours in an 8-hour workday; and was unlimited in her ability to push and pull.[13]

Pizzolatto testified at the hearing that she was able to walk occasionally with her brace.[14] She could not do any housework or lifting, bend or sit for long periods, and had trouble sleeping.[15] She cannot stay comfortable because of her pain; has to take pain medication; cannot lift a gallon of milk from the kitchen floor and place it on the counter; cannot grocery shop, cook,

---

[11] Tr. 164.

[12] Tr. 162.

[13] Tr. 155-161.

[14] Tr. 184.

[15] Id.

clean or do laundry.[16]  She has problems with her back, neck and hip as a result of a car wreck in 2005.[17]

*Findings and Conclusions*

1.  __Disabling pain__

Pizzolatto maintains that the ALJ erred in disregarding her complaints of severe disabling pain.

The ALJ is entitled to determine the credibility of the examining physicians and medical experts and to weigh their opinions accordingly.  Greenspan v. Shalala, 38 F.3d 232, 237 (5th Cir. 1994).  The ALJ is responsible for assessing the medical evidence and determining the claimant's residual functional capacity.  Perez v. Heckler,  777 F.2d 298, 302 (5th Cir. 1985). Further, the ultimate issue of disability is reserved to the Commissioner.  Moore v. Sullivan, 919 F.2d 901, 905 (5th Cir. 1990).

The Fifth Circuit has held that pain, in and of itself, can be a disabling condition, but only when it is "constant, unremitting, and wholly unresponsive to therapeutic treatment."  Wren v. Sullivan, 925 F.2d 123, 128 (5th Cir.1991).  The ALJ has discretion to determine the disabling nature of subjective complaints of pain, "at least where the medical evidence is inconclusive." Cook v. Heckler, 750 F.2d 391, 395 (5th Cir. 1985); Jones v. Bowen, 829 F.2d 524, 527 (5th Cir. 1987).  The ALJ's determination in this regard is entitled to considerable deference.  Id.

---

[16] Tr. 185.

[17] Tr. 189.

Here, the ALJ considered the medical evidence and concluded as follows:

At hearing, the claimant reported living with her husband and her 14-year-old disabled daughter. She has a 5th grade education. She complained of problems with her right ankle. She suffered multiple fractures and had 2 surgeries. She also reported neck and back problems. She still wears a brace on her right leg. She cannot do any housework due to her impairments. She cannot sit for long periods of time and cannot bend. She takes medication for pain and sleep. She can tend to own personal needs. She does not drive due to the effects of her medication.

The undersigned finds that claimant's allegations are not supported by the evidence of record. Therefore they are not fully credible. The undersigned cannot ignore the fact that claimant seeks very little, if any, medical treatment for her allegedly disabling impairments. The claimant was last evaluated at UMC on December 4, 2006. It is reasonable to believe that if claimant's impairments were as severe and disabling as alleged, she would have sought regular medical treatment.

She is aware that she would be entitled to free medical care through the charity hospital system of this state. As such, claimant's testimony regarding her abilities is credible only to the extent it is consistent with the findings herein.

After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.[18]

Pizzolatto argues there is not "one piece of evidence" to contradict her testimony.

Pizzolatto also argues that the ALJ erred in failing to take into consideration that she was unable to obtain follow-up orthopedic care because the only UMC Orthopedic Clinic available after Hurricane Katrina was in Shreveport, which she could not afford to access.

An ALJ may properly consider the frequency in which a claimant seeks treatment for his pain. *See* <u>Jones v. Heckler</u>, 702 F.2d 616, 622 (5th Cir. 1983) (holding that the ALJ's credibility finding that the claimant had "considerably exaggerated her symptomatology," was supported by

---

[18] Tr. 15.

substantial evidence where the ALJ noted that the medical evidence did not show objective clinical findings indicating a musculoskeletal or neurological impairment to support a claim of constant, debilitating pain, and that the claimant was not receiving regular medical care, was not taking an inordinate amount of prescribed pain medications, and that her demeanor at trial was not consistent with that of a person suffering from chronic pain).

Moreover, the claimant bears the burden of supplying adequate records and evidence to prove her claim of disability. *See* 20 C.F.R. § 404.1512(c) ("You must provide medical evidence showing that you have an impairment and how severe it is during the time you say that you were disabled."). Even assuming that Pizzolatto could not afford to travel to the Shreveport Orthopedic Clinic, Pizzolatto has not directed the court to any records that show that she has sought continued treatment for her pain. On the other hand, the records show that her incision had healed, and she had no swelling.

Thus, the record shows that the ALJ properly considered Pizzolatto's allegations of pain, analyzed the severity of pain in connection with the medical evidence and testimony, and determined that Pizzolatto's pain was not, in and of itself, disabling.

Considering the record as a whole, the undersigned concludes that substantial evidence supports the ALJ's decision to discount Pizzolatto's allegation of disabling pain. By limiting her to light work, the ALJ acknowledged that Pizzolatto was in pain that limited her physical abilities. There is substantial evidence in the record to support the ALJ's conclusion that Pizzolatto does not suffer from disabling pain which prevents her from performing the requirements of light work. Accordingly, I find that the ALJ did not err in discounting

Pizzolatto's subjective complaints of disabling pain. Although Pizzolatto may indeed suffer from pain, the record does not support a finding that she is totally disabled because of that pain.

## 2. Medical Vocational Guidelines

As noted above, the ALJ did not call a vocational expert in this matter, but relied solely on the Medical Vocational Guidelines (the "Guidelines") to conclude that Pizzolatto is not disabled. I conclude that this was error.

Once a claimant establishes that she is unable to perform her previous work, the burden shifts to the Commissioner to show that the claimant is able to perform some other kind of substantial work available in the economy. Western v. Harris, 633 F.2d 1204, 1206 (5th Cir. 1981); Jones v. Heckler, 702 F.2d 616, 620 (5th Cir. 1983); Taylor v. Bowen, 782 F.2d 1294 (5th Cir.1986). Here, Pizzolatto has no past relevant work. The Medical-Vocational Guidelines were established to allow the ALJ take administrative notice of the existence of jobs in the national economy when a claimant's residual functional capacity, age, education and previous work experience meet certain specified criteria. Use of the guidelines in appropriate cases has been approved by the United States Supreme Court. Heckler v. Campbell, 461 U.S. 458, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983); Jones v. Heckler, 702 F.2d 616, 622 (5th Cir. 1983). Thus, the Commissioner is relieved in certain cases of the burden of calling a vocational expert to testify about a claimant's ability to perform substantial gainful activity.

The ALJ may use the Guidelines as a framework for making a disability decision when the guidelines alone do not apply:

> These rules represent various combinations of exertional capabilities, age, education and work experience and also provide an overall structure for evaluation of those cases in which the judgments as to each factor do not coincide with those of any specific rule. Thus, when the necessary judgments have been

made as to each factor and it is found that no specific rule applies, the rules still provide guidance for decisionmaking, such as in cases involving combinations of impairments.

\*\*\*

[W]here an individual has an impairment or combination of impairments resulting in both strength limitations and nonexertional limitations, the rules in this subpart are considered in determining first whether a finding of disabled may be possible based on the strength limitations alone and, if not, the rule(s) reflecting the individual's maximum residual strength capabilities, age, education, and work experience provide a framework for consideration of how much the individual's work capability is further diminished in terms of any types of jobs that would be contraindicated by the nonexertional limitations. Also, in these combinations of nonexertional and exertional limitations which cannot be wholly determined under the rules in this Appendix 2, full consideration must be given to all of the relevant facts in the case in accordance with the definitions and discussions of each factor in the appropriate sections of the regulations, which will provide insight into the adjudicative weight to be accorded each factor.

Title 20 C.F.R. Pt. 404, Subpt. P, App. 2, 200.00(d) and (e)(2).

The Fifth Circuit has held:

If impairments are solely exertional or the nonexertional impairments do not sufficiently affect the claimant's residual functional capacity, then the Commissioner may rely exclusively on the Grids to determine whether there is other work in the economy that the claimant can perform. See Fraga, 810 F.2d at 1304. If, however, the claimant suffers from nonexertional impairments or a combination of exertional and nonexertional impairments, then the Commissioner must rely on a vocational expert to establish that such jobs exist in the economy.

Newton v. Apfel, 209 F.3d 448, 458 (5th Cir. 2000). *See also* Scott v. Shalala, 30 F.3d 33 (5th Cir. 1994); Lawler v. Heckler, 761 F.2d 195, 198 (5th Cir.1985).

Here, Pizzolatto complains solely of a non-exertional limitation - constant pain. The ALJ recognized that her complaints were credible in part by limiting Pizzolatto to light work. Here, the ALJ did not call a vocational expert as required by Fifth Circuit jurisprudence but relied solely on the Guidelines as a framework for her decision. This was error and, accordingly, I

recommend that the case be remanded so that a VE may testify regarding Pizzolatto's ability to find work in the economy.

### *Conclusion*

Considering the foregoing, it is **RECOMMENDED** that the Commissioner's decision be **REVERSED AND REMANDED**.  On remand, the ALJ shall use the services of a Vocational Expert in order to make a finding whether there are jobs in the economy that Pizzolatto can perform.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have ten (10) business days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within ten (10) days after receipt of a copy of any objections or responses to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of receipt, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  See Douglass v. United Services Automobile Association, 79 F.3d 1415 (5th Cir.  1996).**

Signed at Lafayette, Louisiana, on July 20, 2009.

Mildred E. Methvin
United States Magistrate Judge